## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN TURNER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 18-2202-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) | |
| COUNTY / KANSAS CITY, KANSAS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

John Turner brings suit against the Unified Government of Wyandotte County / Kansas City, Kansas ("Unified Government") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.  Supplemental Pretrial Order (Doc. #108) filed May 7, 2020.  This matter is before the Court on defendant's Motion For Summary Judgment On [Plaintiff's] Retaliatory Harassment Claim (Doc. #117) filed May 22, 2020.  For reasons stated below, the Court sustains the motion.

### Background

#### I.      Procedural Background

On March 2, 2020, the Court sustained in part Defendant's Motion For Summary Judgment (Doc. #66) filed October 21, 2019.  Memorandum And Order (Doc. #92).  The Court granted summary judgment to defendant on all but two claims: whether because of race, defendant (1) failed to reinstate plaintiff to the Dignitary Protection Detail ("DPD"), and (2) suspended plaintiff for failing to submit an off-duty employment form.  Id. at 46.

On March 13, 2020, plaintiff filed a motion for reconsideration, arguing that he had asserted a separate retaliatory harassment claim on which defendant did not seek summary judgment and the Court did not address.   Plaintiff's Motion To Reconsider The Court's Memorandum And Order (ECF No. 92) Granting, In Part, Defendant's Motion For Summary Judgment (ECF No. 66) (Doc. #95).

On April 16, 2020, the Court sustained plaintiff's motion for reconsideration and directed U.S. Magistrate Judge Teresa J. James to conduct a supplemental pretrial conference and enter a supplemental pretrial order that expressly included plaintiff's retaliatory harassment claim. Memorandum And Order (Doc. #101) at 9.

On May 7, 2020, Judge James entered a Supplemental Pretrial Order (Doc. #108) that included plaintiff's retaliatory harassment claim, along with the claims that had survived defendant's summary judgment motion.   The remaining claims are as follows:

> (1)     Title VII race discrimination in the terms and conditions of employment, specifically (a) whether defendant did not reinstate [plaintiff] to the DPD because of race; and (b) whether defendant suspended him for failing to submit an updated off-duty employment form because of race. *(Count I of Complaint).*

> (2)     Title VII retaliatory harassment. *(Count II of Complaint).*

Supplemental Pretrial Order (Doc. #108) at 23 (footnotes omitted) (emphasis in original).

On May 22, 2020, defendant filed a Motion For Summary Judgment On [Plaintiff's] Retaliatory Harassment Claim (Doc. #117).   Defendant argues that it is entitled to summary judgment on plaintiff's retaliatory harassment claim because its actions were not retaliatory and, even taken together, would not dissuade a reasonable employee from making a charge of discrimination.

## II.     Factual Background[1]

In its motion for summary judgment on plaintiff's retaliatory harassment claim, defendant asserts the following additional uncontroverted facts:

Defendant uses a rating system to evaluate officer performance.   Under this system, officers receive a rating of one to nine in the following ten areas: (1) Decision Making, (2) Planning and Organizing, (3) Initiative and Independence, (4) Attention to Duty, (5) Interpersonal Interactions, (6) Adapting and Coping, (7) Professional Development, (8) Oral Communication, (9) Written Communication and (10) Dependability and Appearance.   Ratings of one, two or three are "Ineffective"; ratings of four, five or six are "Moderately Effective"; and ratings of seven, eight or nine are "Highly Effective."   In addition, the performance evaluation form allows supervisors to add comments and contains a section entitled "Expectations for Next Review Period."

Since implementation of the performance evaluation system, plaintiff has received the following overall ratings, which are an average of his scores in the ten categories:

| __Date__ | __Overall Rating__ |
|---|---|
| June of 2012 | 5.3 |
| December of 2012 | 6.5 |
| June of 2013 | 6.7 |
| December of 2013 | 6.8 |
| June of 2014 | 6.2 |
| December of 2014 | 6.4 |
| June of 2015 | n/a |

---

[1]     The Court incorporates by reference the facts set forth in its Memorandum And Order (Doc. #92).

| | |
|---|---|
| December of 2015 | n/a |
| June of 2016 | n/a |
| December of 2016 | 6.9 |
| June of 2017 | 6.4 |
| December of 2017 | 7.0 |
| June of 2018 | 6.5 |

On December 12, 2016, plaintiff made his first internal complaint of race harassment and discrimination.  At that time, plaintiff was an officer in West Patrol and received a 6.9 overall rating ("Moderately Effective") on his performance evaluation.

On May 18, 2017, plaintiff filed a complaint of race discrimination with the Equal Employment Opportunity Commission ("EEOC").

On June 8, 2017, plaintiff did not receive a rating of less than 5.0 in any category and had an overall rating of 6.4.   In the section titled "Expectations for Next Review Period," Sgt. Storms commented as follows:

> You are very through [sic] with your reports but take too long to complete them, part of this is because you do a case supplement on every report.  This is causing the citizens to receive less than prompt service.   For this reason my expectation is for you to prioritize when a case supplement is actually needed and do them accordingly.

Deposition Exhibit Nos. 22-118 (Doc. #68-11) at 5.   The next day, plaintiff filed another internal report of harassment and discrimination.

In December of 2017, plaintiff received an overall rating of 7.0 ("Highly Effective"), which was his highest overall score since implementation of the performance evaluation system.   Sgt. Storms commented on plaintiff's overall performance as follows:

> [Plaintiff] has adapted well to the duties of the report desk and HQ security Officer, his reports are well written and his interactions with the public and other city employees have been in a professional manner.  From his last eva[l]uation his reports are being done in a more timely manner.

Deposition Exhibit Nos. 2-13 (Redacted) (Doc. #68-9) at 42.   In the space for "Expectations for Next Review Period," Sgt. Storms wrote, "I have the same expectation as your last evaluation and that is for you to only do a Case Supplement when needed."   Id.

In June of 2018, plaintiff received an overall rating of 6.5 ("Moderately Effective") and Sgt. Storms commented as follows:

> [Plaintiff] while writing good reports still is taking too much time to complete them, due to his insistence on doing a case supplement report with every case report even when there is no additional information.  This has caused Officers in the field to be pulled off the streets to assist him.

Id. at 44.

Plaintiff had begun writing case supplements at the suggestion of a member of the technology department who told him that he was including too much information in report synopses and should instead include the additional information in case supplements.   Since then, even though his supervisor has instructed him otherwise, plaintiff has written a case supplement for nearly every report that he has completed.

In the supplemental pretrial order, plaintiff asserts that after he engaged in protected activity by complaining about race discrimination and harassment, defendant retaliated against him by subjecting him to "additional harassment, increased scrutiny, disciplinary action and unfavorable reviews of his work, among other adverse actions."   Supplemental Pretrial Order (Doc. #101) at 12.   He also asserts that defendant's retaliatory conduct would dissuade a reasonable person from pursuing a charge of discrimination.

**Legal Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).   A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."   Liberty Lobby, 477 U.S. at 248.   A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.   Id. at 252.   The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).   Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.   Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.   See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).   It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.   See Liberty Lobby, 477 U.S. at 250-51.   In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.   Conaway v.

Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993).   The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."   Liberty Lobby, 477 U.S. at 251-52.

## Analysis

The Court applies the McDonnell Douglas burden-shifting framework to plaintiff's retaliatory harassment claim.   See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Adcox v. Brennan, 2017 WL 2405326, at *7 (D. Kan. June 2, 2017).   Under this burden-shifting structure, plaintiff must first establish a prima facie case of retaliatory harassment.   If he does so, the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for the adverse employment actions.   From there, the burden returns to plaintiff to show that the stated reason is pretextual.   Trujillo v. Univ. of Colo. Health Sciences Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998); Jones v. Wichita State Univ., 528 F. Supp. 2d 1222, 1241 (D. Kan. 2007).

The parties do not dispute that plaintiff engaged in protected activity by filing internal discrimination complaints (December 12, 2016 and June 9, 2017) and an EEOC charge (May 18, 2016).   Therefore, to establish a prima facie case of retaliatory harassment, plaintiff must show (1) that defendant subjected him to conduct that would dissuade a reasonable employee from making a charge of discrimination; and (2) that a causal nexus exists between plaintiff's opposition and defendant's conduct.   See Haney v. Preston, No. 08-2658 JAR, 2010 WL 5392670, at *12 (D. Kan. Dec. 22, 2010).

As noted, plaintiff asserts that after he made his first internal complaint of race harassment and discrimination on December 12, 2016, defendant initiated a pattern of retaliatory harassment against him by subjecting him to heightened scrutiny, disciplining him, downgrading his

performance evaluation scores, giving specific directives that applied only to him and repeatedly

shifting his work responsibilities.   More specifically, plaintiff asserts that the following

demonstrates a pattern of retaliatory harassment:

- In January of 2017, plaintiff began working at the report desk.   In this position, defendant subjected plaintiff to constant evaluation and criticism "which he perceived as retaliatory." Plaintiff's Opposition To Defendant's Motion For Summary Judgment on Plaintiff's Retaliatory Harassment Claim (Doc. #122) filed June 5, 2020 at 10.

- On February 23, 2017, Sgt. Davis "criticized him for letting a city employee go upstairs, and then changed the rules when she directed [plaintiff] not to let anyone go beyond the lobby" without an escort.   Id.

- In March of 2017, defendant questioned him about telling people when they could return to make a report if he was busy and the citizen could not wait.

- In March of 2017, plaintiff's sergeant interrogated him for telling Victim Services that it would be about one hour before he had time to take a report because he was busy.

- On March 8, 2017, Deputy Chief Garner asked what restroom he was in.

- On May 19, 2017, his sergeant reprimanded him in the presence of other citizens and co-workers.

- After plaintiff filed his EEOC Charge on May 22, 2017, defendant did not conduct an investigation into his claims.

- On May 25, 2017, Sgt. Davis disciplined plaintiff for failing to provide prompt and courteous service to a citizen on May 19.   Plaintiff challenged the discipline and defendant affirmed it.   Plaintiff asserts that this was retaliatory because it "occurred in succession to the escorting reprimand and another incident when [plaintiff] was interrogated by his sergeant for telling victim services that it would be about an hour before he had time to take a report."

- In his June 8, 2017, plaintiff received a lower score on his performance evaluation than he received on his previous evaluation and was criticized for his use of supplemental reports, even though someone had instructed him to use them.

- On July 14, 2017, he received a memorandum on "Report Desk Duties and Responsibilities," which required him to use a specific restroom when working the report desk and to have a sergeant approve his lunch break.

-8-

- During the fall of 2017, he was given a directive that he was not allowed to talk to detectives.

- In October and November of 2017, plaintiff underwent additional Internal Affairs investigations.

- Throughout September, October, November and December of 2017, command staff and co-workers constantly monitored plaintiff, which made him feel uncomfortable.

- On March 8, 2018, defendant disciplined plaintiff for not providing prompt courteous service after another officer accused him of leaving her alone with a man who needed assistance.

- In June of 2018, he received a performance evaluation with another low score for his work performance and criticism for doing supplemental reports.

- Chief Zeigler discussed plaintiff's IA investigations at in-service trainings.

Despite plaintiff's laundry list of complaints and repeated discipline, he has not presented evidence which creates a genuine issue of material fact whether any specific incident was harassment in retaliation for his protected activity.   Plaintiff asserts that he felt or perceived that the discipline was retaliatory, but such evidence is legally insufficient to establish an actionable claim.   See Anderson v. Wintco Inc., 314 F. App'x 135, 140 (10th Cir. 2009) (unsupported conclusory allegations do not create genuine issue of fact); Lawson v. Potter, No. 08-04052-JAR, 2010 WL 11564954, at *17 (D. Kan. Mar. 3, 2010) ("Although plaintiff identifies ninety-four instances of 'discipline,' she has not shown that any single instance of 'discipline' was actually 'harassment, i.e. abuse motivated by retaliatory animus; she merely argues that the list of discipline is extensive.").

Even if plaintiff could demonstrate that when viewed in the aggregate, defendant's conduct was materially adverse and was causally connected to his protected activity, defendant has

presented legitimate and non-discriminatory reasons for its conduct.[2]  Specifically, defendant

explains its actions as follows:

- Sgt. Davis gave plaintiff instructions regarding visitors because Major Anderson had received a complaint about a visitor who entered to the detective bureau without an escort.

- In March of 2017, Major Anderson told plaintiff not to make appointments for people to return to make a report and to instead see people on a first come, first serve basis.  Major Anderson was within his right to instruct plaintiff to treat people who want to make a report equally, rather than permitting some people to make appointments.

- On March 8, 2017, Deputy Chief Garner asked what restroom he was in.  Deputy Chief Garner testified that he could not recall the incident but that if he had inquired about plaintiff's whereabouts, it was because plaintiff's absence from the report desk adversely affected the telephone staff and plaintiff was the first line of defense if someone came through the door.

- On May 19, 2017, Sgt. Davis called plaintiff into her office to investigate a citizen complaint against him and to inform him that she was considering discipline.  On May 25, 2017, she disciplined plaintiff for the incident.  In its order on defendant's first summary judgment motion, the Court held that Sgt. Davis's conduct was not retaliatory.

- In his June 8, 2017, plaintiff received a lower score on his performance evaluation than he received on his previous evaluation and was criticized for his use of supplemental reports, even though someone had instructed him to use them.  Plaintiff's score, however, was within the range of his typical overall scores.  In any event, his score was satisfactory and was a business judgment.[3]

- On July 14, 2017, plaintiff received a memorandum on "Report Desk Duties and Responsibilities," which required him to use a specific restroom when working the report desk and to have a sergeant approve his lunch break.  Captain Owen added the lobby

---

[2]       Plaintiff asserts that defendant's attempt to show that each instance of discipline was legitimate and non-discriminatory is misguided because the Court should view the events in the aggregate.  While the Court may view the alleged harassment in the aggregate for purposes of a prima facie case (i.e. to determine whether the conduct is materially adverse), it is not clear how the Court would determine whether defendant's reasons are pretextual without considering discrete acts.  In any event, the outcome would be the same under either standard.  Regardless whether the Court views defendant's conduct as discrete acts or in the aggregate, plaintiff has not demonstrated a genuine issue of material fact as to pretext.

[3]       Defendant notes that on his next evaluation in December of 2017, plaintiff received a 7.0, which was the highest score he had ever received.

restroom requirement because it is the closest restroom to the report desk and he hoped that the requirement would reduce citizen wait time.  In addition, the memorandum was a compendium of business judgments.

- During the fall of 2017, Sgt. Storms told plaintiff that he was not allowed to talk to detectives because plaintiff had waylaid a financial crimes detective to ask a question. Plaintiff's job was to take reports and when he spoke with the detectives, it took them away from their work.

- In October and November of 2017, plaintiff underwent additional Internal Affairs investigations because citizens filed complaints against him.  Notwithstanding the investigations, plaintiff did not receive any discipline for their complaints.

- On March 8, 2018, Sgt. Lucas Graves disciplined plaintiff after another officer accused him of leaving her alone with a man who needed assistance.  Sgt. Graves imposed a two-day suspension for violating Rule 3.22, which was later amended a violation of Rule 2.14. Defendant notes that the Court previously held that plaintiff did not exhaust administrative remedies for this discipline, and that his discrimination complaint occurred nine months before it.

- In June of 2018, plaintiff received a performance evaluation with a low score for his work performance and criticism for doing supplemental reports.  Plaintiff failed to heed Sgt. Storm's previous admonishment regarding supplemental case reports, and plaintiff admitted that Sgt. Storms had asked plaintiff not to do supplemental reports on every case. Sgt. Storms's decision regarding plaintiff's performance was a business judgment.

- Chief Zeigler discussed IA investigations for training purposes so that officers would learn from each other's mistakes.[4]

Regardless whether the Court considers defendant's actions separately or together, defendant

has asserted legitimate and non-discriminatory reasons for its conduct.   Under McDonnell

---

[4]     As noted, plaintiff also asserts that after plaintiff filed his EEOC Charge on May 22, 2017, defendant did not conduct an investigation into his EEOC charge, but he does not explain how this failure was the result of animus motivated by retaliation.  In addition, plaintiff asserts that throughout September, October, November and December of 2017, "he was constantly being monitored by the command staff and co-workers, which made him feel uncomfortable." Unsupported conclusory allegations do not create a genuine issue of fact.   Anderson, 314 F. App'x at 140.

Douglas, the burden shifts back to plaintiff to demonstrate that defendant's reasons are pretext for retaliatory harassment.

In response to defendant's reasons, plaintiff states—in one sentence—that he has "proffered ample evidence of pretext in this case," and cites his briefing on defendant's first summary judgment motion.  Given that the Court has already rejected nearly all of plaintiff's arguments regarding pretext, plaintiff's one-sentence argument is insufficient to demonstrate a genuine issue of material fact whether defendant's reasons are pretextual.  Defendant is entitled to summary judgment on plaintiff's retaliatory harassment claim.

### Conclusion

Protected activity does not give plaintiff license to hold defendant hostage by proclaiming that any adverse employment decision will be construed as retaliatory.  Lombardo v. Potter, 368 F. Supp. 2d 1178, 1195 (D. Kan. 2005).  Assuming for the sake of argument that plaintiff could establish a prima facie case of retaliatory harassment, he has failed to demonstrate a genuine issue of material fact as to pretext.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment On Retaliatory Harassment Claim (Doc. #117) filed May 22, 2020 is **SUSTAINED**.

**IT IS SO ORDERED.**

Dated this 7th day of August, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-12-